<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TRUSTEES OF THE B.A.C. LOCAL 4 PENSION FUND, TRUSTEES OF THE B.A.C. LOCAL 5 PENSION FUND, TRUSTEES OF THE NEW JERSEY B.A.C. ANNUITY FUND, TRUSTEES OF THE NEW JERSEY B.A.C. HEALTH FUND, TRUSTEES OF THE NEW JERSEY BM&P APPRENTICE AND EDUCATION FUND, and TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND,<br><br>*Plaintiffs*,<br><br>v.<br><br>M&N CONSTRUCTION SERVICES, INC.,<br><br>*Defendant*. | Civil No.: 2:24-cv-00425 (KSH) (LDW)<br><br><u>OPINION</u> |

**<u>Katharine S. Hayden, U.S.D.J.</u>**

**I.      <u>Introduction</u>**

This matter comes before the Court on the motion (D.E. 9) of plaintiffs Trustees of the B.A.C. Local 4 Pension Fund, Trustees of the B.A.C. Local 5 Pension Fund, Trustees of the New Jersey B.A.C. Annuity Fund, Trustees of the New Jersey B.A.C. Health Fund, Trustees of the New Jersey BM&P Apprentice and Education Fund (together, the "Local Funds"), and Trustees of the Bricklayers & Trowel Trades International Pension Fund ("International Funds," together with the Local Funds, the "Funds" or "plaintiffs") for default judgment against defendant M&N Construction Services, Inc. ("M&N").

Plaintiffs allege that M&N failed to make required contributions to a group of employee benefit funds under the parties' collective bargaining agreement and seek the contributions and fees due under that agreement. For the reasons set forth below, the Court will grant plaintiffs'

1

motion, subject to the caveat that before final judgment is entered, plaintiffs shall provide the Court with an updated interest calculation from March 25, 2024 to December 27, 2024 as outlined in the attached order.

## II.     **Background**

The complaint alleges as follows.  Plaintiffs are the employer and employee trustees of labor-management funds organized and operated pursuant to trust agreements and various collective bargaining agreements.  (D.E. 1, Compl. ¶¶ 4-9.)  M&N, a construction company, is a New Jersey corporation with its principal place of business in New York.  (*Id.* ¶ 10.)  In May 2019, M&N and the B.A.C. Administrative District Council of New Jersey (the "Union") entered into a collective bargaining agreement (the "CBA"), which established the terms and conditions of employment for certain M&N employees.  (*Id.* ¶ 11; D.E. 10, Declaration of Ken Crandall ("Crandall Decl.") ¶ 4.)  The CBA requires M&N to make monetary contributions to the Funds, at specified hourly rates, for work performed by M&N's employees within the trade and geographical jurisdiction of the Union ("covered work").  (D.E. 1, Compl. ¶¶ 11-12.)  The CBA provides that the Funds may audit M&N's books and records to ensure compliance with its obligations, and that any employer found "to have been substantially inaccurate in reporting shall be charged in full costs of such audit."  (*Id.* ¶ 13; Crandall Decl. ¶ 8 & Ex. A, Art. XI, § 1(H)(6).)

The CBA further binds M&N to documents, policies, and regulations adopted by the Funds' trustees.  (Crandall Decl. ¶ 7 & Ex. A, Art. XI, § 1(H)(1).)  Relevant here, the Local Funds have promulgated a Policy for Collection of Delinquent Fringe Benefit Contributions (the "collection policy"), which provides that

2

> Employers shall be liable for the payment of delinquent Contributions with interest on such delinquent Contributions at the rate of ten percent (10%) per annum (calculated from the day following the Due Date and compounded annually) for the Funds, and fifteen percent (15%) per annum (calculated from the day following the Due Date and compounded annually) for the International Pension Fund. Employers shall also be liable for liquidated damages of twenty percent (20%) of the amount of delinquent Contributions owing and all attorneys' fees and costs.

[(D.E. 1, Compl. ¶¶ 14, 21; Crandall Decl. ¶¶ 7, 9 & Ex. C, Art. II, ¶ 6.)]

An audit of M&N's books and records from the period covering July 22, 2021 through December 31, 2022 revealed that M&N failed to make all required contributions to the Funds in connection with the covered work of its employees. (D.E. 1, Compl. ¶ 15.) After sending demand letters to M&N on September 21, 2023, October 24, 2023, and November 20, 2023 for the unpaid contributions, plaintiffs brought this action on January 24, 2024. (*Id.* ¶ 17; Declaration of Jayden N. Peters ("Peters Decl.") ¶ 3 & Ex. F.) Plaintiffs allege that M&N is liable pursuant to sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145 and section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, for delinquent contributions in the amount of $41,611.32, plus interest, liquidated damages, audit costs, and attorneys' fees and costs. (D.E. 1, Compl. ¶¶ 1, 19-26.)

M&N was timely served (D.E. 5, 6), but it neither filed an answer or other response to the complaint. On February 21, 2024, plaintiffs requested entry of default (D.E. 7), and the Clerk entered default the following day. On March 25, 2024, plaintiffs filed their motion (D.E. 9) for default judgment against M&N, which has not filed opposition. In support, plaintiffs submitted the declaration of Ken Crandall, the administrator of the Local Funds (D.E. 10); the declaration of Tony Sgroi, the director of the payroll audit department at Schultheis & Panettieri LLP, the firm used to audit M&N ("Sgroi Decl.") (D.E. 11); and the declaration of counsel Jayden Peters

(D.E. 12). Plaintiffs seek judgment in the amount of $69,368.57, representing $41,611.32 in delinquent contributions; $8,075.81 in prejudgment interest calculated up to March 25, 2024; $8,322.27 in liquidated damages; $5,749.35 in audit costs; and $5,609.82 in attorneys' fees and costs. (D.E. 13 at 12-13.) Further, plaintiffs seek additional interest on the contributions from March 25, 2024 through the date of judgment. (*Id.* at 13.)

### III. Legal Standard

The Court may enter default judgment under Fed. R. Civ. P. 55(b)(2) against a properly served defendant who fails to file a timely responsive pleading. A party seeking default judgment is not entitled to that judgment as of right; rather, "[t]he decision to enter a default judgment is 'left primarily to the discretion of the district court.'" *Maersk Line v. TJM Int'l Ltd. Liability Co.*, 427 F. Supp. 3d 528, 532 (D.N.J. 2019) (Hillman, J.) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). In ruling on the motion, the Court accepts the well-pleaded factual allegations in the complaint, except those relating to damages, and must decide whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* at 533 (citations omitted).

In addition to determining that the facts state a legitimate cause of action and that the movant has established its damages, the Court must examine: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Trs. of Int'l Union of Painters v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 441 (D.N.J. 2024) (Bumb, C.J.) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)). The Court must also be satisfied that it has subject matter and personal jurisdiction, and that the defendant was properly served. *Id.*

4

### IV. Analysis

The preliminary requirements for entry of default judgment are met here. The Court has subject matter jurisdiction based on both ERISA, 29 U.S.C. §§ 1132(e)-(f) and the LMRA, 29 U.S.C. § 185(a). The Court also has personal jurisdiction over M&N. Since this action has been brought under ERISA, M&N need only have significant contacts with the United States as a whole for a district court to exercise personal jurisdiction over it. *See id.* at 441-43 (collecting cases and explaining that personal jurisdiction under ERISA is judged by "the defendant's contacts with the United States as a whole, rather than a particular forum"). M&N, a business incorporated under the laws of New Jersey, with its principal place of business in New York, and whose employees work in New Jersey, has sufficient contacts with the United States for this Court to exercise personal jurisdiction over it. (D.E. 1, Compl. ¶ 10; Crandall Decl. ¶ 4 & Ex. A, Art. III, ¶ A.)

Additionally, plaintiffs properly served M&N in accordance with ERISA and Fed. R. Civ. P. 4(h). *See* 29 U.S.C. § 1132(e)(2) (providing that a plaintiff may serve a defendant "in any other district where [the] defendant resides or may be found"); Fed. R. Civ. P. 4(h)(1)(B) (allowing for service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process"). Plaintiffs served the summons and complaint on Kelsia Babshir, M&N's owner and registered agent, on January 30, 2024. (Peters Decl. ¶ 5 & Ex. H.)

M&N has never answered or otherwise responded to the complaint, and default was entered by the Clerk. M&N's failure to appear or file any response to the complaint has prevented plaintiffs from prosecuting this action and obtaining relief, to its prejudice. *See*

5

*Teamsters Health & Welfare Fund of Phila. & Vicinity v. Rock Canyon, Inc.*, 2015 WL 881694, at *2 (D.N.J. Mar. 2, 2015) (Bumb, J.) (finding that the plaintiffs would be prejudiced if default was not entered since the defendant's "failure to make the required contributions can negatively impact [p]laintiffs' ability to pay their beneficiaries"). Additionally, because M&N did not respond the Court cannot determine whether M&N has any meritorious defenses, but nothing in the current record indicates any possible defenses. *See Teamsters Health & Welfare Fund of Phila. & Vicinity v. Dubin Paper Co.*, 2012 WL 3018062, at *4 (D.N.J. July 24, 2012) (Simandle, J.). And absent any evidence to the contrary, "the [d]efendant's failure to answer evinces the [d]efendant's culpability in its default." *Teamsters Pension Fund of Phila. & Vicinity v. American Helper, Inc.*, 2011 WL 4729023, at *4 (D.N.J. Oct. 5, 2011) (Simandle, J.). No such evidence of a reason other than M&N's "willful negligence" is present here. *See id.*

Next, the Court must determine whether the complaint states a proper cause of action. Plaintiffs have stated a claim under ERISA and have established their entitlement to the damages they seek, totaling $69,368.57. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall . . . make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. And in any action pursuant to section 515 "in which a judgment in favor of the plan is awarded," courts are required to award the plan (1) "the unpaid contributions"; (2) "interest on the unpaid contributions"; (3) "liquidated damages provided for under the plan in an amount not in excess of 20 percent"; (4) "reasonable attorney's fees and costs of the action"; and (5) "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2).

In connection with their motion for default judgment, plaintiffs submitted the CBA, the collection policy, and the signature page of M&N approving the CBA. (Crandall Decl. ¶¶ 4, 7 & Exs. A, B, C.) Accepting plaintiffs' well-pleaded allegations as true, M&N is bound to a collective bargaining agreement with plaintiffs, covering May 1, 2019 through present, in which it is obligated it to make contributions to the Funds. The CBA bound M&N to plaintiffs' collection policy and provided that plaintiffs' have the right to audit M&N's books and records. (*Id.* ¶ 8 & Ex. A, Art. XI, § 1(H)(1), (6).) Accordingly, the Court is persuaded that M&N was obligated to make contributions pursuant to the CBA during the period of July 22, 2021 through December 31, 2022, and an audit revealed that M&N failed to make required contributions. (Sgroi Decl. ¶¶ 5-7 & Ex. D.) Accordingly, plaintiffs have stated a cause of action pursuant to ERISA for delinquent contributions under the parties' CBA. *See Rock Canyon, Inc.*, 2015 WL 881694, at *2; *Dubin Paper Co.*, 2012 WL 3018062, at *3-4.

In seeking to enforce ERISA section 515 and M&N's obligations, plaintiffs have sought the unpaid contributions, interest on the unpaid contributions, liquidated damages, attorneys' fees and costs, and audit costs, as permitted under the statute and the relevant agreements, and they have supplied the factual basis for the amounts they seek. As demonstrated by the Sgroi declaration and the July 17, 2023 audit report, M&N failed to make $41,611.32 worth of contributions (consisting of $36,713.86 due to the Funds and $4,897.46 due to the International Funds) for the period of July 22, 2021 through December 31, 2022. (Sgroi Decl. ¶ 7 & Ex. D.) Pursuant to the collection policy, which imposes interest on delinquent contributions of 10% per year for the Funds and 15% per year for the International Funds, the auditors calculated the interest owed on the unpaid contributions to be $8,075.81 (consisting of $6,735.16 in total interest due to the Funds and $1,340.65 in total interest due to the International Funds). (*Id.* ¶ 9

7

& Ex. E.) Plaintiffs also submit that the liquidated damages are calculated at a rate of 20% of the delinquent contributions, which in this case amounts to $8,322.27. (Crandall Decl. ¶¶ 7, 9 & Ex. C, Art. II, ¶ 6.) Since liquidated damages are contemplated by the collection policy and are not in excess of 20%, this amount is acceptable under ERISA.

Further, under ERISA, plaintiffs are entitled to reasonable attorneys' fees and costs. 29 U.S.C. § 1132(g)(2). Plaintiffs request attorneys' fees in the amount of $5,107.00 and costs in the amount of $502.82 for a total of $5,609.82. (Peters Decl. ¶¶ 12-14.) In support of their request, plaintiffs submit timesheets which include descriptions of the legal services performed on specified dates. (*Id.* ¶ 9 & Ex. I.) In addition, counsel provides the hourly rates charged as follows: $290/hour for associate Jayden Peters, $130/hour for senior paralegal Eva Keating, and $130/hour for paralegal Abigail Frankel. (*Id.* ¶¶ 9-11 & Ex. I.) The total legal services rendered was calculated to be 19.1 hours, consisting of 16.4 hours by Peters, 0.4 hours by Keating, and 2.3 hours by Frankel. (*See* Ex I.)

The Court finds these rates to be reasonable in light of the nature of the case and the services rendered. *See GCIU-Emp'r Retirement Fund v. Bd. of Trs. of GCIU-Emp'r Retirement Fund*, 2017 WL 11717417, at *3 (D.N.J. Mar. 13, 2017) (Hammer, J.) (collecting cases that outline rates of between $225/hour and $425/hour for associates and $105/hour to $200/hour for paralegals are reasonable in ERISA actions in this district); *Trs. of UFCW & Participating Food Indus. Emps. Tri-State Health & Welfare Fund v. Avon Foods, Inc.*, 2018 WL 2733692, at *3 (D.N.J. June 7, 2018) (Kugler, J.) (finding associate attorney rate of $290/hour and paralegal rate of $175/hour reasonable in ERISA default judgment action); *see also Finkel v. J&H Elec. Contr., Inc.*, 2023 WL 4763366, at *3 (E.D.N.Y July 26, 2023) (finding a rate of $290/hour for a Virginia & Ambinder, LLP junior associate to be reasonable, "particularly because of the

8

extensive amount of delegation to associates in this case"). The Court also finds, after review of the Peters declaration and supporting documentation, that the work does not appear to be excessive, redundant, or otherwise unnecessary. *GCIU-Emp'r Retirement Fund*, 2017 WL 11717417, at *3.

Plaintiffs also seek $502.82 in costs, which reflect the court filing fee, service fees, research fees, and postage costs incurred. (Peters Decl. ¶ 13 & Ex. I.) The Court finds that these requested costs are reasonably related to this litigation and were properly documented, such that the combined bill of $5,609.82 for attorneys' fees and costs is reasonable and will be awarded.

Finally, plaintiffs allege that they are entitled to audit costs in the amount of $5,749.35, since the CBA contemplates that any employer found "to have been substantially inaccurate in reporting shall be charged in full costs of such audit." (Crandall Decl. ¶ 8 & Ex. A, Art. XI, § 1(H)(6).) Under 29 U.S.C. § 1132(g)(2)(E), it is within the Court's discretion to award "such other legal or equitable relief as [it] deems appropriate." Since the parties agreed that any employer found to have delinquent contributions would bear the costs of the audit, the Court finds this relief is appropriate and will award such costs to plaintiffs.

Therefore, the Court will award the requested amount of $69,368.57 in unpaid benefit fund contributions, interest through March 25, 2024, liquidated damages, attorneys' fees and costs, and audit costs to plaintiffs. With respect to plaintiffs' request for interest from March 25, 2024 through the date of judgment, plaintiffs shall submit by December 27, 2024 a certification setting forth the calculation of interest through the date of that submission, together with an updated proposed judgment reflecting inclusion of that amount.

## V.      Conclusion

For the reasons set forth above, the Court will grant the motion for default judgment. An appropriate order will follow.


Date: December 19, 2024                                         /s Katharine S. Hayden
                                                                Katharine S. Hayden, U.S.D.J.